UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY JO SCHAD,

                Plaintiff,

v.                                    3:15-CV-0742
                                    (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                        OF COUNSEL:

LACHMAN, GORTON LAW FIRM         PETER A. GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.          REBECCA H. ESTELLE, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

       This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 20.)  This case has proceeded in accordance with General

Order 18.

       Currently before the Court, in this Social Security action filed by Mary Jo Schad

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 13, 16, 19.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on January 31, 1991. (T. 145.) She received a GED. (T. 169.) Generally, Plaintiff's alleged disability consists of depression, anxiety, irritable bowel syndrome, diabetes, back pain, knee pain, and obesity. (T. 168.) Her alleged disability onset date is June 1, 2008. (T. 53.) She has no past relevant work.

### B.    Procedural History

On June 25, 2012, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 145.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 3, 2013, Plaintiff appeared before the ALJ, F. Patrick Flanagan. (T. 27-52.) On April 25, 2014, ALJ Flanagan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-26.) On May 22, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-22.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 25, 2012, the application date. (T. 13.) Second,

the ALJ found that Plaintiff had the severe impairments of depressive disorder, anxiety disorder, lumbago due to unknown cause, and obesity. (*Id.*) The ALJ determined that Plaintiff's polycystic ovarian syndrome, borderline diabetes, migraine headaches, asthma, right knee pain, dizziness, viral syndrome, acute cholecystitis, gastroesophageal reflux disease, and tobacco abuse were non-severe impairments. (T. 14.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 14-16.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work; however, she must avoid concentrated exposure to respiratory irritants such as fumes, odors, dust, gases, and poor ventilation and she was able to understand, remember, and carry out simple instructions, use appropriate judgment to carry our simple tasks, respond appropriately to supervisors, co-workers, and usual work situations, and deal with changes in a routine work setting. (T. 17.)[1] Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 20-22.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the step five determination was not supported by substantial evidence. (Dkt. No. 13 at 5-9 [Pl.'s Mem. of Law].) Second, Plaintiff

---

[1]    Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a).

argues the ALJ's RFC determination was not supported by substantial evidence. (*Id.* at 9-13.) Third, and lastly, Plaintiff argues the ALJ improperly weighed the medical opinions. (*Id.* at 13-21.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues the ALJ properly evaluated the medical opinion evidence and his RFC finding were supported by substantial evidence. (Dkt. No. 16 at 7-13 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ properly relied on the vocational expert ("VE") testimony. (*Id.* at 13-14.)

### C. Plaintiff's Reply Brief

Plaintiff filed a reply brief. (Dkt. No. 19 [Pl.'s Reply].) In his reply brief Plaintiff essentially offers additional case law to bolster the first argument raised in her memorandum of law. (*Id.* at 1-5.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

B.    **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    Treatment of Medical Opinions in the Record and the RFC Determination

Plaintiff's RFC is the most she can still do despite her limitations. *See* 20 C.F.R. § 416.945. In making an RFC determination, the ALJ must base his decision on all of the relevant medical and other evidence in the record. *Id.* at § 416.945(a)(3).

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence

which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. § 416.927(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 416.927(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  20 C.F.R. § 416.927(c)(2)(i)-(iv).  The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received her primary health care from Sae Joun Park, M.D.  On August 7, 2012, Dr. Park completed an ability to perform work assessment form for the New York State Office of Temporary and Disability Assistance Division of Disability Determinations.  (T. 376-385.)[2]  Dr. Park noted Plaintiff had a diagnosis of dipolar disorder and listed her symptoms as mood swings, depression, and obesity.  (T. 376.)  Dr. Park did not complete the section requesting a current mental status examination and current functional assessment of Plaintiff's activities of daily living, or the section requesting details regarding Plaintiff's ability to function in a work setting.  (T. 378-379.)

---

[2]        Of note, the pages of the form are scanned out of order.

Dr. Park did however, provide exertional limitations.  Dr. Park indicated Plaintiff could occasionally lift and carry 20 pounds.  (T. 382.)  Dr. Park opined Plaintiff had no limitations in her ability to stand, walk, or sit.  (*Id.*)  Dr. Park opined Plaintiff was "limited" in her ability to push and/or pull, but did not specify the degree of the limitation.  (T. 383.)

Dr. Park also provided non-exertional mental limitations.  Dr. Park opined Plaintiff had no limitations in the area of "understanding and memory."  (T. 383.)  Dr. Park opined Plaintiff was "limited" in her ability to sustain concentration and persistence, Plaintiff was "limited" in her ability to adapt, and Plaintiff was "limited" in the area of social interaction.  (T. 383, 385.)  Although the form directs the provider to "describe below" Plaintiff's limitation, Dr. Park did not provide any additional information.  (*Id.*)

Dr. Park submitted office treatment notations dated October 2009 through June 2012.  (T. 368-375.)  Treatment notations included a diagnosis of gastroesophageal reflux disease (T. 368, 372), a referral to mental health treatment (T. 368), notations of abdominal pain (T. 369, 370), a diagnosis of and notations of depression (T. 370, 373), notations of obesity and a referral for possible surgery (T. 371), complaints of back pain (T. 373), and treatment for an upper respiratory infection/head cold (T. 374.)

On September 25, 2012, Plaintiff underwent a physical consultative examination by Justine Magurno, M.D.  On physical examination Dr. Magurno observed Plaintiff had a normal gait, could toe walk with difficulty, could stand on her heels, had a full squat with some difficulty rising, had a normal stance, used no assistive devices, needed no help changing for the exam or getting on and off the exam table and was able to rise from her chair without difficulty.  (T. 401.)  In a medical source statement, Dr. Magurno

opined Plaintiff should avoid dust, fumes, and other known lung irritants.  (T. 403.)  Dr.

Magurno further opined Plaintiff had "mild limitations" for bending.  (*Id.*)

Plaintiff also underwent a psychiatric evaluation on September 10, 2012,

performed by Cheryl Loomis, Ph.D.  (T. 386-390.)  On examination, Dr. Loomis noted

Plaintiff was cooperative and had adequate social skills.  (T. 387.)  Dr. Loomis observed

that Plaintiff appeared her stated age, was appropriately dressed and groomed, and

made appropriate eye contact.  (*Id.*)  Dr. Loomis observed Plaintiff's thought process

was coherent and goal directed with no evidence of thought disorder.  (*Id.*)  In a medical

source statement, Dr. Loomis opined Plaintiff could follow and understand simple

directions and instruction.  (T. 389.)  She further opined Plaintiff could perform simple

tasks independently, maintain attention and concentration, maintain a regular schedule,

and learn new tasks.  (*Id.*)  Dr. Loomis stated Plaintiff could perform complex tasks with

supervision.  (*Id.*)  Dr. Loomis stated Plaintiff could not appropriately deal with stress.

(*Id.*)

E. Kamin[3], a non-examining State agency medical consultant, reviewed the

record on October 11, 2012 and completed a Psychiatric Review Technique form and

mental RFC form.  (T. 68-72.)  In the RFC form, Dr. Kamin opined Plaintiff had no

limitations in her ability to understand or in her memory.  (T. 70.)

Dr. Kamin identified limitations in Plaintiff's ability to maintain sustained

concentration and persistence.  Specifically, Dr. Kamin opined Plaintiff was "not

significantly limited" in the following areas: her ability to carry our very short and simple

---

[3]     E. Kamin's credentials, although not stated, can be determined from the record.  The
record contains only the name "E. Kamin, 38."  (T. 72.)  The code "38" corresponded with the medical
specialty "Psychology" according to the Social Security Administration's Program Operations Manual
System ("POMS").  *Bessette v. Colvin*, 2015 WL 867172, at *10 (D. VT. Feb. 27, 2015) (citing POMS DI
24501.004).

instruction; her ability to carry our detailed instructions; her ability to maintain attention and concentration for extended periods; and her ability to work in coordination with or in proximity to others without being distracted by them. (T. 70-71.) Dr. Kamin opined that the record contained "no evidence of limitation" in the following categories: the ability to sustain an ordinary routine without special supervision and the ability to make simple work-related decisions. (T. 71.) Dr. Kamin opined Plaintiff was "moderately limited" in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (*Id.*) Dr. Kamin also opined Plaintiff was "moderately limited" in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 71.)

Dr. Kamin identified limitations in Plaintiff's ability in social interactions. Dr. Kamin opined Plaintiff was "moderately limited" in her ability to interact appropriately with the general public. (T. 71.) Dr. Kamin opined Plaintiff was "not significantly limited" in her ability to ask simple questions or request assistance; in her ability to accept instructions and respond appropriately to criticism from supervisors; in her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and in her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id.*) Overall, Dr. Kamin opined that Plaintiff retained "the ability to perform at least unskilled work on a sustained basis." (T. 72.)

The record also contains mental health treatment notations from five sessions with Broome County Mental Health. Plaintiff received counseling from Sarah Miles,

LCSW.  Treatment notations from May 27, 2010, described Plaintiff as appropriately dressed and groomed, open, cooperative, and oriented.  (T. 319.)  Notations also indicated Plaintiff had normal speech, intact remote recall, some deficits in recent recall, and appeared of average intelligence.  (*Id.*)  On June 24, 2010, Ms. Niles provided talk therapy and noted Plaintiff appeared very motivated for treatment.  (T. 327.)  On July 8, 2010, Ms. Niles noted Plaintiff was aware that she has to look into finding a job, or other activity.  (T. 326.)  Ms. Niles  encouraged Plaintiff to look for employment.  (*Id.*)  On August 13, 2010, Ms. Niles noted Plaintiff was "concerned" because Workforce NY was trying to place her in the workforce and Plaintiff was "consumed with fear about going to work."  (T. 325.)  Ms. Niles stated the Plaintiff was applying for SSI benefits and opined that "given her stated symptoms it would not be enough to substantiate such payment." (*Id.*)  Ms. Niles encouraged Plaintiff to consider finding employment.  (*Id.*)  Ms. Niles stated Plaintiff was "not interested in hearing what was said today."  (*Id.*)  On September 9, 2010, Ms. Niles opined "it would be good for [Plaintiff] to work as she could get her mind off what was going on in her personal world and help build some necessary independence" and "[Plaintiff] should also try to find employment."  (T. 324.)  Ms. Niles noted Plaintiff stated she did not want to work.  (*Id.*)  Notations from Plaintiff's provider on October 29, 2010, noted that it was "really important for [Plaintiff] to work at some point as she does have skills.  Her anxiety [was] not at the level that would keep her from working."  (T. 323.)  Notations from December 22, 2010, indicated Plaintiff was unemployed, on public assistance and "[did] not want to work."  (T. 321.)  Plaintiff was discharged from care in January 2011.  (T. 317.)  Discharge notations indicated Plaintiff "was struggling with the idea of working and felt that she could not work based on her

one experience in the workforce. Once she was encouraged to find work and/or work toward[s] a personal goal, she stopped attending sessions." (T. 316.) Notations indicated Plaintiff did not respond to a "no-show letter" and her case was closed. (*Id.*)

Plaintiff argues the ALJ's mental RFC determination did not properly account for Plaintiff's limitations in her ability to make appropriate decisions, relate adequately with others, and appropriately deal with stress. (Dkt. No. 13 at 9-13 [Pl.'s Mem. of Law].)[4] In support of her argument Plaintiff asserts that the medical opinions provided by Dr. Loomis and Dr. Kamin support a finding of greater mental limitations than imposed by the ALJ. (*Id.*)

Social Security Ruling 85-15 states that the basic mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions and directions, respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting. SSR 85-15, 1985 WL 56857, at *4.

Plaintiff asserts that Dr. Loomis's medical source statement "compels a conclusion that Plaintiff [was] unable to meet the basic mental demands of work." (Dkt. No. 13 at 12 [Pl.'s Mem. of Law].) Plaintiff highlights Dr. Loomis's conclusion that Plaintiff could not make appropriate decisions, could not relate adequately with others, and could not appropriately deal with stress. (*Id.* at 11.) The ALJ specifically addressed these statements by Dr. Loomis and ultimately concluded that they were inconsistent with the medical evidence in the record, Dr. Park's opinion, and Dr. Kamin's opinion. (T. 20.) The ALJ also reasoned the statements were inconsistent with Dr. Loomis's own treatment notations which indicated Plaintiff was cooperative with adequate social skills,

_____

[4]    Plaintiff does not argue the ALJ erred in his RFC determination limiting Plaintiff to sedentary work.

appropriate eye contact with adequate expressive and receptive language, a coherent and goal-directed thought process, mildly impaired recent and remote memory skills and intact attention and concentration skills.  (T. 20.)

First, An ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  Therefore, the ALJ properly adopted some, but not all, limitations imposed by Dr. Loomis.

Second, the ALJ's reasoning for rejecting Dr. Loomis's "absolute limitations" based on Plaintiff's mental status examination was proper.  *Stottlar v. Colvin*, No. 5:13-CV-0047, 2014 WL 3956628, at *16 (N.D.N.Y. Aug. 13, 2014) (ALJ properly afforded opinion that plaintiff "may have" difficulty understanding instructions and "may have" difficulty interacting appropriately with others little weight where mental status examinations revealed plaintiff's attention and concentration were intact, and plaintiff was cooperative, her manner of relating, social skills, and overall presentation were adequate).  Here, the ALJ reasoned Dr. Loomis's statements were inconsistent with her observations of Plaintiff's demeanor  during their session; therefore, the ALJ properly determined those statements were inconsistent with other evidence in the record.

In sum, the ALJ was not required to adopt the whole of Dr. Loomis's medical source statement in formulating his mental RFC, further, the ALJ provided adequate reasoning for rejecting a portion of Dr. Loomis's medical source statement based on other evidence in the record and her own mental status examination.[5]

The ALJ properly concluded a portion of Dr. Loomis's opinion was inconsistent with other medical evidence and under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  Plaintiff failed to do so here.

Plaintiff next argues the opinion of Dr. Kamin provided limitations in mental functioning that the ALJ failed to include in his RFC determination or "otherwise adequately explain why he [did] not include them."  (Dkt. No. 13 at 12 [Pl.'s Mem. of Law].)  Plaintiff then immediately argues that the "moderate limitations" assessed by Dr.

_____

[5]        Plaintiff also argues a second evaluation, performed by Dr. Loomis, on December 11, 2013 supports greater mental limitations.  (Dkt. No. 13 at 13 [Pl.'s Mem. of Law].)  The second opinion by Dr. Loomis was performed on behalf of Broome County Department of Social Services and after Plaintiff's December 3, 2013 hearing.  The ALJ held the hearing record open specifically for Dr. Loomis's evaluation; however, the record was either never sent or never received.  Therefore, the ALJ did not have this piece of evidence in front of him before making his decision.
        **Error! Main Document Only.**The regulations provide that the Appeals Council considers new and material evidence if it relates to the period on or before the date of the ALJ's decision.  20 C.F.R. § 404.976(b)(1), s*ee Jenkins v. Colvin*, No. 1:13-CV-1035, 2015 WL 729691, at *5 (N.D.N.Y. Feb. 19, 2015) (citation omitted).  If the AC finds that the evidence is new and material, it will review the case if it finds that the ALJ's decision is contrary to the weight of the current record evidence.  *Id.*, citing 20 C.F.R. § 404.970(b).  Even if the AC finds that the evidence is not new and material and declines to review the ALJ's decision, the evidence in question becomes part of the record for review by the court.  *Id.*, citing *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).  If the AC denies review after reviewing the new evidence, the Commissioner's decision includes the AC's conclusion that the ALJ's findings remain correct despite the new evidence.  *Id.*
        Here, the AC determined the December 2013 evaluation by Dr. Loomis was new and material; however, they concluded the evaluation did not provide a basis for changing the ALJ's decision.  Plaintiff does not argue the AC's erred in its determination.

Kamin, which the ALJ did not specifically include in his RFC, cannot provide substantial evidence to support the ALJ's RFC determination.  (*Id.* at 13.)  Plaintiff simultaneously admonishes the ALJ for failure to include specific limitations and then argues those limitations would not constitute substantial evidence even if the ALJ had included them.

Although Dr. Kamin opined Plaintiff had "moderate" limitations in her ability to perform in certain areas of mental functioning, he opined that the moderate limitations did not preclude her from performing "at least unskilled work on a sustained basis."  (T. 62.)  In his decision, the ALJ stated that notwithstanding moderate limitations in some areas, Dr. Kamin concluded Plaintiff could perform unskilled work on a sustained basis. (T. 19.)  The ALJ adequately acknowledged the limitations imposed by Dr. Kamin and reasoned that those limitations did not limit Plaintiff's ability to perform unskilled work. (*Id.*)  Therefore, the ALJ's properly determined that Dr. Kamin's limitation to unskilled work encompassed his opinions regarding specific "moderate" limitations.

Plaintiff next argues that ALJ erred in the weight he afforded to the various medical opinions in the record because his explanations were "illogical and internally inconsistent."  (Dkt. No. 13 at 13-21 [Pl.'s Mem. of Law].)  The ALJ afforded "significant weight" to the opinions of Drs. Park, Loomis, and Kamin.  (T. 20.)

Plaintiff argues that although the ALJ afforded Dr. Park's opinion "significant weight," he in actuality rejected the opinion and was required to re-contact Dr. Park for further explanation.  (Dkt. No. 13 at 13-14 [Pl.'s Mem. of Law].)[6]  First, Plaintiff appears to overlook the portion of Dr. Park's opinion that provided physical limitations.  Dr. Park opined Plaintiff was able to lift and carry 20 pounds occasionally and had no limitations

_____

[6]  Plaintiff argues the ALJ should have recontacted Dr. Park elsewhere in her brief as well. (Dkt. No. 13 at 10-11 [Pl.'s Mem. of Law].)

in her ability to stand, walk, and sit. (T. 382.) The ALJ's physical RFC determination was clearly based on the opinions of Dr. Park and Dr. Magurno. (T. 19-20.) Plaintiff does not question the ALJ's physical RFC determination.

Regarding Dr. Park's mental limitations, the ALJ reasoned that although Dr. Park opined Plaintiff was "limited" in her ability to engage in sustained concentration and persistence, adapt, and interact, the use of the term "limited" was not quantified. (T. 20.) As previously stated herein, the ALJ was not required to adhere to the whole of one opinion. *Matta*, 508 F. App'x at 56. Further, the ALJ was not required to re-contact Dr. Park to seek clarification on her use of the term "limited."

To be sure, the ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. § 416.912(d). Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a plaintiff' treating physician, including an assessment of the plaintiff's functional capacity, in order to afford the claimant a full and fair hearing. *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512(e); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002) (collecting cases); *Hardhardt v. Astrue*, No. 05-CV-2229, 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008)). However, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete. Where the source's opinion includes all of the factors set forth in 20 C.F.R. § 416.913[7] and there is no indication that further contact will result in additional information, re-contact is not necessary. *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at

---

[7] Pursuant to 20 C.F.R. § 416.913(b), medical reports should include a patient's (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and a (6) statement about what the patient can still do despite his or her impairments based on the findings set forth in factors (1) through (5).

*17 (N.D.N.Y. Mar. 25, 2009). Dr. Park provided treatment notations and a medical source statement; therefore, the evidence submitted by Dr. Park's was complete and the ALJ was not required to re-contact her.

Plaintiff argues the ALJ also erred in affording "significant weight" to Drs. Loomis and Kamin. (Dkt. No 13 at 15-20 [Pl.'s Mem. of Law].) Regarding Dr. Loomis, Plaintiff essentially repeats her initial argument that the ALJ's RFC failed to provide for additional limitations imposed by Dr. Loomis. (*Id.* at 12.) As outlined above, the ALJ properly concluded that Dr. Loomis's opinions that Plaintiff could not make appropriate decision, relate adequately with others or deal with stress were inconsistent with overall medical evidence, including the opinions of Drs. Park and Kamin, as well as her own mental status findings. (T. 20.) The ALJ also concluded that any limitations Plaintiff had regarding social interaction were accounted for in unskilled work, which primarily involves dealing with objects, rather than people, under SSR 85-15. (T. 20.)

Plaintiff argues the ALJ erred in relying on the opinion of Dr. Kamin because Dr. Kamin did not examine Plaintiff and Dr. Kamin provided "no meaningful explanation for his conclusions." (Dkt. No. 13 18-19 [Pl.'s Mem. of Law].) First, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 416.912(b) (6), 416.913(c), and 416.927(f)(2); *see also Leach ex. Rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Second, the ALJ did not solely rely on the opinion of Dr. Kamin, the ALJ relied on the opinions of Dr. Park and Dr. Loomis as well.  Third, Dr. Kamin, contrary to Plaintiff assertion, provided an explanation for his determination.  It is apparent from Dr. Kamin's report that he relied on the medical source statement and examination notations provided by Dr. Loomis (T. 59, 61-62) and the medical evidence in the record at the time from Broome County Mental Health and Dr. Park (T. 58).  Therefore, the ALJ did not err in affording Dr. Kamin's opinion "significant weight," or in relying, in part, on his opinion in making his mental RFC determination.

In sum, the ALJ's mental RFC determination was supported by substantial evidence and the ALJ did not err in the weight afforded to the medical opinions in the record.  The ALJ's mental RFC was supported by the opinions of Drs. Park, Loomis, and Kamin.  The ALJ provided adequate reasoning for his adaptation, or rejection, of certain portions of the providers' statements.  Therefore, for the reasons stated herein, and the reasons provided in Defendant's brief, the ALJ's mental RFC determination was supported by substantial evidence.

### B.    The ALJ's Step Five Determination

At step five in the sequential evaluation, an ALJ is required to perform a two part process to first assess the plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that the plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C. F.R. § 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404,

Subpart P, Appendix 2 (commonly called "the Grids"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that an ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a [plaintiff's] ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp,* 802 F.2d, at 605–06. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

At the hearing a VE testified that based on a hypothetical posed by the ALJ, a person with Plaintiff's vocational profile and RFC could perform the representative occupations of order clerk (DOT 209.567-014), final assembler (DOT 713.687-018), and waxer (DOT 779.687-038). (T. 47-48.) In his step five determination, the ALJ concluded Plaintiff was not disabled based on the testimony of the VE and under the Grids. (T. 21-22.)

Plaintiff argues the ALJ's step five determination was not supported by substantial evidence because the VE's testimony did not identify valid number of available jobs. (Dkt. No. 13 at 6 [Pl.'s Mem. of Law].)[8] Plaintiff specifically argues that the VE testified he could not give specific numbers for job availability without conducting

---

[8] Plaintiff does not argue that the ALJ's determination, that Plaintiff was not disabled based on the Grids, was in error. Plaintiff also filed a Reply Brief (Dkt. No. 19) in which Plaintiff supplied more case law to support her argument that the ALJ erred in his reliance on the VE testimony.

a labor market survey and therefore the VE testimony could not constitute substantial evidence.  (*Id.*)  Defendant argues any error the ALJ may have made in his reliance on VE testimony was harmless because a finding of not disabled could have been reached without the assistance of a VE.  (Dkt. No. 16 at 13 [Def.'s Mem. of Law.]

The ALJ's determination at step five was supported by substantial evidence, because the ALJ properly relied on the Grids, as well as VE testimony, in making his determination.

If Plaintiff was limited to a full range of sedentary work, then based on her vocational factors, Plaintiff would be found not disabled under the Grids. 20 C.F.R. Part 404, Subpart P, Appendix 2.  However, Plaintiff had additional mental and environmental limitations.  To assist in determining the extent to which Plaintiff's non-exertional limitations impacted Plaintiff's ability to perform sedentary work, the ALJ relied, in part, on the testimony of the VE.

The ALJ stated in his decision that he relied on the VE testimony "[t]o determine the extent to which [Plaintiff's mental and environmental] limitations erode[d] the unskilled sedentary occupational base."  (T. 21.)  The VE provided examples of occupations which existed given Plaintiff's limitations, thus providing evidence that Plaintiff's non-exertional impairments did not preclude all occupations classified as sedentary work.  (T. 47-48.)  The ALJ then concluded, based on testimony from the VE and using the Grids as a framework, Plaintiff was not disabled.  *See Calabrese v. Astrue*, 358 Fed.Appx. 274, 276 (2d Cir. 2009) (ALJ did not err in ultimately relying on the Grids at step five where he also called on a VE to assist in determining whether plaintiff's nonexertional limitations significantly eroded the range of work plaintiff could

perform). The ALJ ultimately determined that Plaintiff's mental and environmental limitations did not significantly erode the occupational based of sedentary work.

As stated in Part IV.A., despite her mental limitations, Plaintiff retained the ability to perform unskilled work, because "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4.[9] Therefore, Plaintiff's limitation to simple, routine, repetitive work did not erode the occupational base of sedentary work, because she still retained the mental capacity required to carry out unskilled work.

The ALJ was entitled to rely on the Ruling's administratively-noticed fact that the occupational base was not severely eroded given Plaintiff's mental limitations. *See Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010) ("The ALJ found that Petitioner's mental condition did not limit her ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and responding to supervision. Thus, her nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the Medical–Vocational Guidelines was permissible.")

Plaintiff's environmental limitations did not significantly erode the occupational base. The RFC restricted Plaintiff to avoid concentrated exposure to respiratory

---

[9]      SSR 96-9p also provides guidance in using the Grids as a framework when a plaintiff has and RFC for less than sedentary work, "Table No. 1 establishes an occupational base that at a minimum includes the full range of unskilled sedentary occupations administratively noticed."  SSR further states "[i]n order for a rule in Table No. 1 to direct a conclusion of not disabled, the individual must be able to perform the full range of work administratively noticed by a rule. This means that the individual must be able to perform substantially all of the strength demands defining the sedentary level of exertion, as well as the physical and mental nonexertional demands that are also required for the performance of substantially all of the unskilled work considered at the sedentary level."

irritants.  (T. 17.)  A restriction to avoid excessive amounts of respiratory irritants such as dust has minimal impact on the occupational base because most job environments do not involve great amounts of dust.  SSR 85-15, 1985 WL 56857, at *8.  The need to avoid "concentrated" exposure to respiratory irritants has only a minimal impact on Plaintiff's ability to perform the range of sedentary work given in the ALJ's RFC determination.  See *Pavia v. Colvin*, No. 6:14-CV-06379, 2015 WL 4644537, at *6 (W.D.N.Y. Aug. 4, 2015) (the need to avoid concentrated exposure to respiratory irritants has only a minimal impact on plaintiff's ability to perform the range work); SSR 85-15, 1985 WL 56857, at *8.

Under the guidance of SSR 85-15, Plaintiff's additional mental and environmental limitations would not significantly erode the occupational base for sedentary work.  The conclusion that Plaintiff's occupational base was not significantly eroded was also supported by the VE's testimony which provided a sampling of sedentary occupations Plaintiff could still perform given her non-exertional limitations.  The ALJ concluded that Plaintiff was not disabled not only on the testimony of the VE, but within the framework of 20 C.F.R. Part 404, Subpart P, Appx 2 .  (T. 22.)  Therefore, for the reasons stated herein and in Defendant's brief, the ALJ properly relied on the Grids as a framework in making his step five determination that Plaintiff was not disabled.  (*Id.*)

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.

Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:     March 29, 2016

*Bill Carter*

William B. Mitchell Carter
U.S. Magistrate Judge